**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CASE NO. CR412-18** |
| | ) | |
| v. | ) | |
| | ) | |
| **ELIJAH AKEEN SAMPSON, aka "SHAWN"** | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

COMES NOW the United States of America, by and through its undersigned counsel, and hereby files the instant sentencing memorandum in the above-captioned matter. The Government has reviewed the Pre-sentence Investigation Report prepared by the United States Probation Office and has no objections to the factual recitation included therein, or to the calculation of the offense guidelines. Additionally, the Government submits that a downward variance is not supported by the facts or the law in this case.

## I . Background

As provided in the factual basis in Defendant Elijah Akeen Sampson's plea agreement and in the testimony at the Rule 11 hearing, from June 22, 2011 through February 22, 2012, Defendant ELIJAH AKEEN SAMPSON, aided and abetted by other unindicted coconspirators in this case, distributed cocaine, crack cocaine, fake Ecstasy, and five firearms, three of which (including the one with the obliterated serial number) were sold along with the illegal drugs, in Chatham County, Georgia. As a result of such conduct, on February 10, 2012, a Southern District of Georgia Grand Jury returned a 19-count indictment**, CR 212-18**, against ELIJAH AKEEN SAMPSON, aka "SHAWN," charging him with nine counts of Distribution of Controlled Substances in violation of

1

Title 21, United States Code, Section 841, one count of Unlicensed Dealing in Firearms in violation of Title 18, Section 922(a)(1)(A), five counts of Possessing Firearms as a Convicted Felon in violation of Title 18, Section 922(g)(1), three counts of Carrying Firearms During and In Relation to Drug Trafficking in violation of Title 18, Section 924(c), and one count of Possession of a Firearm with an Obliterated Serial Number in violation of Title 18, Section 922(k). The Government adopts and incorporates by reference the factual recitation contained in the October 10, 2012 Pre-Sentence report of Defendant ELIJAH AKEEN SAMPSON.

On June 6, 2012, Defendant ELIJAH AKEEN SAMPSON pled guilty to one count of Carrying a Firearm During and In Relation to Drug Trafficking, which carries a mandatory minimum sentence of five years and a maximum penalty of life imprisonment, and one count of Possession of a Firearm by a Felon, which carries a maximum term of imprisonment of 10 years. Had the defendant been convicted of all counts of the indictment, the defendant would have faced an additional 25-year consecutive mandatory minimum for each of the two other counts of violation of Title 18, Section 924(c). Thus, had he been convicted of all counts, he would have faced a statutory mandatory minimum of 55 years, and a maximum penalty of life imprisonment. *See* Title 18, Section 924(c)(1)(C)(i).

## II. Guidelines Calculations

The Government agrees with the guidelines calculations recommended by the Probation Officer. Pursuant to U.S.S.G. §2K2.4(c), if the defendant is determined to be a career offender under §4B1.1, the guideline sentence shall be determined under §4B1.1(c). The Government agrees with the Probation Officer that the applicable

2

guideline range is 262 to 327 months.  The statutory maximum for Carrying a Firearm During and In Relation to Drug Trafficking, however, is life imprisonment.

### III . Analysis and Applicable Law

### A. Application of the Section 3553 Sentencing Factors

In the wake of *United States v. Booker*, federal sentencing is now governed by 18 U.S.C. § 3553(a), which states that district courts "shall consider" several sentencing factors.  543 U.S. 220 (2005).  In addition, the Supreme Court in *Booker* made the Guidelines sentencing range a required consideration, see § 3553(a)(4); but *Booker* "permits the court to tailor the sentence in light of other statutory concerns as well." *Booker*, 543 U.S. at 245-246. In this case, the statutory maximum sentence is life imprisonment.

The first factor for review under 3553(a)(1) is the nature and circumstances of the offense and the history and characteristics of the Defendant.  Defendant's criminal conduct in this case spanned a period of eight months, involving sales of a total of 137.17 grams of cocaine hydrochloride, 13.12 grams of cocaine base, 14 purported Ecstasy tablets, and five firearms, one with an obliterated serial number, and involved at least one co-conspirator.  The Defendant's criminal history is notable for its extent and for the Defendant's poor performance and almost immediate return to criminal activity after each conviction or incarceration.  It includes two convictions for possession of controlled substances with the intent to distribute, obstruction of justice, possession of controlled substances, carrying a concealed weapon, and carrying a pistol without a permit.  After being arrested on June 14, 2009 for possession of marijuana with intent to distribute and obstruction, he was released on bond June 15, 2009.  On July 26, 2009, he was again found in possession of marijuana with the intent to distribute it.  He was

3

convicted of both offenses on March 8, 2010, given credit for time served, and placed on five years' probation. On April 1, 2010, he was arrested for the concealed weapon and carrying a pistol without a permit. On August 13, 2010, his probation on the possession with intent convictions was partially revoked, and he was ordered to serve 12 months for the two revocations and the concealed weapon. He was released from custody and returned to probation March 7, 2011. He began selling drugs to undercover agents on June 22, 2011.

The next factor to be considered, under Section 3553(a)(2)(A), is the need for the sentence to reflect the seriousness of the offense and to promote respect for the law. The potential danger posed to the community by the sale of over 150 grams of cocaine and five firearms, one with an obliterated serial number, is significant. Section 3553(a)(2)(B) requires taking into consideration the need to deter criminal conduct. The public has a compelling interest in deterring crimes involving such potential danger to the community. More important, the public has a compelling interest in keeping an armed drug dealer, such as Defendant ELIJAH AKEEN SAMPSON, off of the streets.

In this case, punishment below the guidelines level, as Defendant requests, is not sufficient to prevent further crimes by the defendant. If sentenced at the reduced level Defendant requests, he would be eligible for release after serving 85% of the sentence, or 153 months, which is less than 13 years. Approximately 12 years of the sentence would remain if he receives credit for the time served in pretrial detention, which means that he would be eligible for release in October 2024. At that time, the defendant will be just 35 years old, still at the prime of his life, and able to commit many

more crimes.  Nothing in the record indicates that he will refrain from drug dealing or carrying firearms when he returns to the community.

Sampson has been sentenced to probation or to various brief jail sentences, all terms of one year or less, for his six previous convictions.  This leniency has not served to deter the Defendant from committing new crimes.  More important, it has not protected the public from further criminal activity by this Defendant. Thus, protecting the public, another factor for consideration under §3553(a)(2)(c), is served by sentencing the Defendant within the sentencing guidelines range. Section 3553(a)(2)(D), which requires consideration of the need to provide defendants with rehabilitative or other training, can be accomplished while sentencing Defendant Sampson at a level commensurate with his criminal conduct and danger to the community.

Under Section 3553(a)(4), the Court must consider the Sentencing Guidelines range, but is not bound to that range.  The record in this case shows the range to be appropriate for this Defendant.  Section 3553(a)(6) requires the Court to avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct.  In this regard, the Court should consider the example of *United States v. Denson*, 387 Fed.Appx. 926 (11th Cir. July 20, 2010).  Denson was indicted with three counts of distribution of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), and (b)(1)(c); and one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g), 924(a)(2).  The presentence investigation report classified Denson as a career offender and found his guideline range at 262-327 months, just as in the case at bar.  Denson was sentenced to 262 months.

The District Court in *Denson* correctly decided that sentencing Denson below the guidelines would create a disparity between Denson and other career offenders:

> The district court, moreover, expressly said that it considered all of the factors contained within § 3553(a) and that it had given "a lot of thought" to Denson's argument for a below-guideline sentence. *See Talley*, 431 F.3d at 786. The district court also discussed, in depth, the application of several of the § 3553(a) factors, including Denson's familial circumstances, his past criminal conduct, and the circumstances of the offenses that led to Denson being classified as a career offender. *See* 18 U.S.C. § 3553(a)(1). The court further noted that the sentence avoided unwarranted sentencing disparities with the sentences of other defendants who were classified as career criminals. *See* 18 U.S.C. § 3553(a)(6). The court acknowledged that it could sentence Denson below the applicable guideline range, but found that a within-guideline sentence was appropriate given the § 3553(a) factors. *See* 18 U.S.C. § 3553(a)(3). Given the due consideration to the § 3553(a) factors demonstrated by the district court and the discretion the court is afforded in evaluating and weighing those factors, the district court did not abuse its discretion in imposing a low-end guideline range sentence.

*Denson*, 387 Fed.Appx. at 929. The conclusion that a below-guidelines sentence would lead to an unwarranted sentencing disparity is even more true in this case, where Sampson has already received the enormous benefit of the opportunity to plead guilty to only one of three Title 18 Section 924(c) charges, despite overwhelming videotaped evidence as to all three. If convicted of all three, he would face a 55-year mandatory minimum.

In affirming the 262-month sentence, the *Denson* Court also considered nearly every case cited, and considered and rejected nearly every argument made, by Defendant Sampson in his Sentencing Memorandum:

> First, we are unpersuaded by Denson's claim that his sentence was procedurally unreasonable because the district court failed to adjust his guideline range based on the Government's alleged sentencing manipulation. "Sentencing factor manipulation occurs when the Government's manipulation of a sting operation, even if insufficient to support a due process claim, requires that the manipulation be filtered out of the sentencing calculus." *United States v. Docampo*, 573 F.3d 1091, 1097 (11th Cir.2009) (quotation and brackets omitted), *cert. denied*, --- U.S. ----, 130 S.Ct. 2342, 176 L.Ed.2d 564 (2010). "Sentencing

6

> factor manipulation focuses on the Government's conduct." *Id.* (quotation and brackets omitted). The defendant bears the high burden of proving that the Government's conduct was sufficiently reprehensible. *Id.* To prevail on a sentencing factor manipulation claim based on the Government's sting operation, the Government must have engaged in "extraordinary misconduct." *Id.* (quotation omitted).
>
> We have previously held that the use of a large amount of fictitious drugs by the Government in a sting operation did not result in sentencing factor manipulation. *United States v. Sanchez*, 138 F.3d 1410, 1413-14 (11th Cir.1998). We have also held that the Government's purchase of crack cocaine, rather than powder cocaine, from a defendant was not sentencing manipulation, even though the decision resulted in a longer sentence for the defendant. *United States v. Williams*, 456 F.3d 1353, 1370-71 (11th Cir.2006), *abrogated on other grounds by Kimbrough v. United States*, 552 U.S. 85, 93, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007). Further, we have rejected a defendant's claim of sentencing manipulation where a confidential informant provided the defendant with a firearm equipped with a silencer, the possession of which triggered a mandatory minimum sentence of 30 years' imprisonment. *United States v. Ciszkowski*, 492 F.3d 1264, 1269-71 (11th Cir.2007).
>
> Denson has not shown that the Government's conduct rose to the level of extraordinary misconduct. The evidence shows that a confidential source ("CS") bought crack cocaine from Denson three times, each time buying an increased amount. Our previous holdings show that it will not recognize sentencing manipulation based on the Government's decision to purchase a certain substance from a defendant or its decisions that affect the amount of drugs that are involved in a defendant's offense. *See Sanchez*, 138 F.3d at 1413-14; *Williams*, 456 F.3d at 1370-71. In addition, we have held that the Government's conduct did not rise to the level of extraordinary misconduct when it provided the contraband that resulted in the sentencing enhancement, and here, the Government did not even provide Denson with the crack cocaine that resulted in his enhanced sentence. *See Ciszkowski*, 492 F.3d at 1271. We will not infer extraordinary Governmental misconduct based on the Government's decision to purchase crack cocaine from Denson on three occasions, even if this decision did result in Denson receiving a longer sentence. *See Williams*, 456 F.3d at 1371.

*Denson*, 387 Fed.Appx. at 928. To infer Governmental misconduct would be even less appropriate here, where the aggregated drug amounts did <u>not</u> affect the sentence. Sampson is being sentenced as a career offender on the offense of Carrying a Firearm During and In Relation to Drug Trafficking. Even if the single transaction to which he pleaded guilty, involving the gun and drugs sold together on December 19, 2011, were

7

the only offense he committed, he would still be sentenced as a career offender. Likewise, any one of the drug deals would result in a career offender sentence.

As such, the Government respectfully requests that the Court follow the sentencing recommendation of the Probation Office and sentence Defendant Sampson to a term of 262 months.

**IV. Sentencing Recommendation and Rationale for Request for Guidelines Sentence for Defendant ELIJAH AKEEN SAMPSON**

The Government recommends the sentence of 262 months called for by the sentencing guidelines as the sentence that most adequately recognizes the seriousness of the defendant's conduct and his criminal history, as well as the need to protect the public. In response to the Defendant's arguments in his Sentencing Memorandum, the Government respectfully notes that the Career Offender designation derives from the defendant's criminal history, and is triggered by the defendant's commission of each of the drug trafficking offenses and each of the Carrying Firearms During and In Relation to Drug Trafficking offenses in the indictment. Since the Defendant's sentencing guidelines range is not affected by the amount of drugs or the number of guns involved, it is hard to see why the Defendant raises the issue of "sentencing factor manipulation." Since he does, however, it is important to note that in each and every 11th Circuit case cited by the Defendant, the concept is mentioned, but never applied. In addition to the *Denson* Court's summary of the holdings of most of the cases, the Court should consider the holding of the *Haile* Court:

> **Although this court has recognized sentencing factor manipulation as an avenue for a sentence reduction, we have never applied it**. *Docampo*, 573 F.3d at 1097–98. Instead, we have held that the use of a large amount of fictitious drugs by the Government in a sting operation does not amount to sentencing factor manipulation. *Sanchez*, 138 F.3d at 1413–14. We have also

8

> held that the Government's purchase of crack cocaine, rather than powder cocaine, from a defendant was not sentencing factor manipulation even though the purchase resulted in a longer sentence. *United States v. Williams*, 456 F.3d 1353, 1370–71 (11th Cir.2006), *abrogated on other grounds by Kimbrough v. United States*, 552 U.S. 85, 93, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007). Further, we have held that the Government did not engage in sentencing factor manipulation when a confidential informant provided a defendant with a firearm equipped with a silencer, the possession of which triggered a mandatory 30–year minimum sentence. *Ciszkowski*, 492 F.3d at 1269–71.
>
> Based on this line of cases, we cannot say that the district court abused its discretion in declining to reduce Beckford's sentence on a theory of sentencing factor manipulation. Even though Government agents initiated the conversation about the guns, it was Beckford and Haile who agreed to supply and who brought the guns to the transaction, just as the defendant in *Ciszkowski* accepted the gun with a silencer. *Id*. And, similar to *Williams*, although agents offered to supply the defendants cocaine in addition to marijuana, Beckford did not reject the offer or express any discomfort with the idea. 456 F.3d at 1370–71. We therefore decline to overturn the district court's decision regarding Beckford's claim of sentencing factor manipulation.

*United States v. Haile*, 685 F.3d 1211, 1223 (11th Cir. 2012) (emphasis added).

As for the remainder of the Defendant's argument, and to the extent that the Defendant seeks to cast the actions of the ATF agents in an unfavorable light, the Government responds that in a long term undercover operation, there are operational reasons not to arrest Defendants the moment "probable cause" is established. In the case of Sampson, this is especially true, since a review of the agents' reports shows that investigators did not learn his identity until after the first firearm sale, at which point they had been dealing with him for approximately three months.

No one forced or coerced Mr. Sampson to come to the undercover location. He met an informant who told him the agent wanted cocaine, and Sampson went to him. The undercover agents never left the undercover location and drove to his location to purchase contraband. Each time, he chose to get into a car and willingly drive to the undercover location to sell contraband. He chose to broker a gun deal and sell four

other guns himself.  Most important, he chose to sell guns and drugs together, including one gun with an obliterated serial number that he pointed out would "kill" the same as any other gun despite its appearance (it had pink handles).  He sold guns and drugs together three times, subjecting himself to a potential 55-year mandatory minimum.

Contraband, by its nature, rarely is offered for sale openly and obviously.  In order to stem the flow of dangerous contraband and make the streets safer, it is the duty of undercover ATF agents to seek to purchase contraband, whether it be guns, drugs, counterfeit currency, bombs, or other dangerous, illegal items that agents are trying to remove from the streets.  If the individuals they ask tell the agents that they do not engage in those activities, the transactions never happen and the individuals are never charged.  All Sampson had to say is that he does not sell drugs or guns, and they would not have asked again.  Instead, he came back to them 13 times.  On three of those occasions, he chose to sell guns and drugs together.  Only he is responsible for the nature and extent of his crimes.

ELIJAH AKEEN SAMPSON, age 23, is a multi-convicted felon whose criminal history has continued unabated since his arrest for obstruction of a law enforcement officer at age 17.  He committed the instant offenses, including carrying firearms during and in relation to the distribution of controlled substances, while on probation for two separate cases of possession of controlled substances with the intent to distribute.  As he has repeatedly traveled through the revolving door of the state court system, he has added firearms to the mix.  He is designated as a Career Offender under the sentencing guidelines, but the Court must also examine these offenses and his record in light of 3553(a).  In a statutory sentencing range of five years to life imprisonment, the

Government respectfully submits that the 262-month sentence recommended by the Guidelines and the Probation Office is sufficient and appropriate in this case.

The Government respectfully recommends that Defendant ELIJAH AKEEN SAMPSON be sentenced to 262 months, pursuant the sentencing guidelines, and pursuant to Title 18, Section 3553(a).

This 19th day of October 2012.

    Respectfully submitted,

    EDWARD J. TARVER
    UNITED STATES ATTORNEY

    ***/s/ Cameron Heaps Ippolito***
    Cameron Heaps Ippolito
    Assistant United States Attorney
    Virginia Bar No. 35831

22 Barnard Street, Suite 300
Post Office Box 8970
Savannah, GA 31412
(912) 652-4422

CERTIFICATE OF SERVICE

This is to certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this Court.

This 19th day of October 2012.

Respectfully submitted,

EDWARD J. TARVER
UNITED STATES ATTORNEY

*/s/ Cameron Heaps Ippolito*
Cameron Heaps Ippolito
Assistant United States Attorney
Virginia Bar No. 35831

22 Barnard Street, Suite 300
Post Office Box 8970
Savannah, GA  31412
(912) 652-4422