IN THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH  DIVISION


UNITED STATES OF AMERICA     *

v.                           *   CASE NUMBER CR412-18

ELIJAH AKEEN SAMPSON         *

_____

Transcript of Change of Plea (Rule 11) Hearing held June 6, 2012 before
The HONORABLE WILLIAM T. MOORE, JR., Judge Presiding, reported
by Marie Cowart, Official Court Reporter.

_____

APPEARANCES:


For the Government            FREDERICK W. KRAMER, III, AUSA

For the Defendant               ROBERT PHILLIPS, III, ESQ.


*Proceedings recorded by shorthand with back-up recording; transcript produced from note reading in
conjunction with transcription of back−up recording.*

# I N D E X

PRELIMINARIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

EXAMINATION OF DEFENDANT

    By the Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

PLEA AGREEMENT OUTLINED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

PROFFER BY THE GOVERNMENT

MICHELLE KAUFMAN

    Direct Examination by Mr. Kramer . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

ENTRY OF GUILTY PLEA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1       [NOTE: Court is opened.]

2       THE COURT: Good morning, ladies and gentlemen.  Would you

3   call the first case, please.

4       CLERK: Yes, Your Honor.  The Court calls the case United

5   States of America versus Elijah Sampson, Case Number CR412-18.

6   Representing the government is Fred Kramer; representing the defendant

7   is Robert Phillips, III.  This case is called for a change of plea.

8       MR. KRAMER: The government is ready to proceed, Your

9   Honor.

10      MR. PHILLIPS: We're ready, Judge, as well.

11      [NOTE: Counsel and defendant approach the lectern.]

12      THE COURT: Mr. Sampson, give me your full name, please.

13      MR. SAMPSON: Elijah Akeen Sampson.

14      THE COURT:  And before you were arrested in this case, where

15  did you live, Mr. Sampson?

16      MR. SAMPSON: 1206 East 70th Street.

17      THE COURT: In the city of Savannah?

18      MR. SAMPSON: Yes, sir.

19      THE COURT: Now, you have heard the Clerk announce your

20  desire to enter a plea of guilty and that is your right; however, before this

21  Court is authorized to accept a plea of guilty it is necessary that I ask you a

22  number of questions.  The purpose of this hearing is to make a

23  determination whether you are entering this plea freely and voluntarily,

24  whether you understand the rights that are yours that you are waiving and

25  giving up by pleading guilty; and also, whether there is a factual basis for

1    the Court to accept this plea.

2          The entire purpose of this proceeding is, almost for the last

3    time, to allow you to know the importance and the severity of the step that

4    you are about to make; and to impress upon you the loss of many of your

5    legal rights.

6          You're reminded that later in this proceeding you will be placed

7    under oath.  You will be sworn to tell me the truth.  If you do not tell me the

8    truth you will be committing perjury, for which you could be subjecting

9    yourself to additional punishment for testifying falsely under oath.

10          Also, if you ever seek to undo or set aside what occurs here

11    today you're going to be confronted by the answers you give me, so make

12    sure you understand the words and the questions.  If there is any word or

13    question that you do not understand you can ask your lawyer for

14    explanation and advice.  If necessary I will recess this hearing and give you

15    additional time to discuss with your lawyer any matter that may be

16    troubling or concerning to you.  If you need the Court to further explain any

17    matter to you, do not hesitate to ask and I will stop and explain in detail

18    any matter that you need to know.

19          So do you understand, Mr. Sampson, that you have a right to

20    stop this proceeding and have questions explained to you?

21          MR. SAMPSON: Yes, sir.

22          THE COURT: Do you have any questions now before I ask the

23    Clerk to administer the oath?

24          MR. SAMPSON: No, sir.

25          THE COURT:  Would you administer the oath, please.

1    CLERK:  Yes, Your Honor.

2    [Defendant Sworn]

3    E L I J A H   S A M P S O N

4    DEFENDANT, SWORN, TESTIFIED AS FOLLOWS

5    EXAMINATION BY

6    THE COURT:

7    Q    Mr. Sampson, what is your Social Security number?

8    A    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.

9    Q    How old are you?

10   A    Twenty-three.

11   Q    Twenty-six?

12   A    Twenty-three.

13   Q    Twenty-three?  Are you married?

14   A    No, sir.

15   Q    Have you ever been married?

16   A    No, sir.

17   Q    Do you have any children?

18   A    No, sir.

19   Q    Can you read, write and understand the English language?

20   A    Yes, sir.

21   Q    How far did you attend school?

22   A    Seventh grade.

23   Q    Did you drop out in the seventh grade, or did you complete the seventh

24   grade?

25   A    I dropped out in seventh grade, but I had enrolled in GED.

1     Q    Did you get your GED?

2     A    No, sir.

3     Q    Have you ever been treated for any mental illness?

4     A    No, sir.

5     Q    Have you ever been under the care of a psychiatrist?

6     A    No, sir.

7     Q    When was the last time you were treated by a medical doctor?

8     A    I can't say the last time.

9     Q    Are you presently taking any kind of medication?

10    A    No, sir.

11    Q    When was the last time you had any alcoholic beverage?

12    A    December.

13    Q    When was the last time you had any illegal drugs or any illegal drug-

14    related substance?

15    A    December.

16    Q    What was that substance?

17    A    Marijuana.

18    Q    Do you clearly understand where you are and why you are here today?

19    A    Yes, sir.

20    Q    Do you understand how important this proceeding is for you?

21    A    Yes, sir.

22    Q    The Court advises you, Mr. Sampson, that you are presumed innocent.

23    What it means to be presumed innocent is, if you should elect to go to trial

24    in this case you do not have to prove anything.  The United States

25    Department of Justice is your accuser; and it is the government that must

1   prove the government's version of this offense beyond a reasonable doubt

2   to the satisfaction of a fair and impartial jury before you would be

3   authorized to be convicted.  Do you understand that?

4   A   Yes, sir.

5   Q   Also, the indictment that charges you is nothing more than a formal

6   written charge.  It is not evidence of guilt, and it cannot be used against you

7   for that purpose.  Do you understand that?

8   A   Yes, sir.

9   Q   You also have a right to a speedy and a public trial.  This case has not

10  been assigned for trial, but if you elect to go to trial I'll try your case

11  promptly.

12        You would have a right to have your family and friends, and the press

13  and the public attend the trial.  You would have a right to assistance of your

14  lawyer at every stage of the proceeding and any appeal if necessary.  Do you

15  understand that?

16  A   Yes, sir.

17        THE COURT:  Mr. Phillips, are you retained or appointed?

18        MR. PHILLIPS: I'm appointed, Judge.

19  Q   Mr. Sampson, you have sworn under oath to an officer of this Court

20  that you do not have funds to hire a lawyer; therefore, the Court has

21  assigned Mr. Phillips to represent you, but that in no way should influence

22  your decision to plead guilty because he will continue to represent you

23  throughout any trial and any appeal, and the Court would ensure that he is

24  paid for that representation.  Do you understand that?

25  A   Yes, sir.

Q    Did the fact that you did not hire your own lawyer with your own

money force or influence you to believe that you should plead guilty?

A    No, sir.

Q    In addition to the rights that I have explained to you, if you should

elect to go to trial you would have a right to participate with your lawyer in

the selection of a jury.  You would have a right to confront the government's

proof.  You would have a right to cross-examine witnesses at trial.

In your own defense you can bring witnesses to testify, and if they will

not voluntarily come, we can compel them to come through the subpoena

power of this court.

You also have a right to remain silent.  You do not have testify.  You

do not have to incriminate yourself in any way.

If you should elect to testify, then your lawyer can examine you and

the government lawyer would have a right to cross-examine you.

But do you understand that by pleading guilty that you are giving up

all of these rights, and if I accept this plea that will end this case except for

sentencing that will take place several months from now.  Do you

understand that?

A    Yes, sir.

Q    Have you ever pled guilty or been convicted of a crime before?

A    Yes, sir.

Q    Was that a felony offense?

A    Yes, sir.

Q    Where did it take place?

A    At the club uptown on Montgomery and Harris Street.

Q    In Chatham County?

A    Chatham County, yes, sir.

Q    If you plead guilty in this case you are going to lose many of your civil rights.  You are going to lose your right to vote, your right to hold public office, your right to serve on juries, and your right to ever possess a firearm.  And I want you to listen carefully to what I am telling you about possessing a firearm.

      If you plead guilty, for the remainder of your life you may not possess a firearm of any kind.  You can't have it in your home, your automobile, your place of employment.  If you are found in possession of a firearm you will be arrested, you will be brought back before this Court or some other Court, and you will be given a term of imprisonment for that possession.  Do you understand that?

A    Yes, sir.

Q    Do you understand the difference between a plea of guilty and a plea of not guilty?

A    Yes, sir.

Q    A plea of guilty admits that you did what the government accuses you of doing pursuant to your plea agreement with the government.  A plea of not guilty denies those charges and requires the government to prove them beyond a reasonable doubt.  Do you understand that?

A    Yes, sir.

Q    Mr. Sampson, you may have defenses to these charges, I do not know.  But in all likelihood, if you plead guilty today you are going to forever lose your right to complain on appeal about any action of the government, any

1    government agent, prosecutor, the Magistrate Judge, your own lawyer, this

2    Court, or anyone else as far as any complaint that you might have about

3    anything that you say they did or failed to do in your case.  Do you

4    understand that?

5    A    Yes, sir.

6    Q    How long have you known Mr. Phillips, your lawyer?

7    A    Since February 30th.

8    Q    Have you told him everything you know about the charges against you

9    in this case?

10   A    Yes, sir.

11   Q    Have you been truthful with him?

12   A    Yes, sir.

13   Q    Has he gone over your case with you and tried to explain to you any

14   possible defenses?

15   A    Yes, sir.

16   Q    Have you had enough time to meet and talk with your lawyer?

17   A    Yes, sir.

18   Q    How many occasions have you and Mr. Phillips discussed this case?

19   A    About six or seven times.

20   Q    Have you talked to your family and friends about making this decision

21   to plead guilty?

22   A    Yes.

23   Q    Are you satisfied with your lawyer and the way that he has represented

24   you in this case?

25   A    Yes, sir.

1    Q    Have you read the indictment and the charges against you?

2    A    Yes, sir.

3    Q    And have you gone over those charges with your lawyer?

4    A    Yes, sir.

5    Q    In this case, Mr. Sampson, you're charged in numerous counts of an

6    indictment.

7         Counts 1 through 4, and 7 through 9, and Count 13 and Count 16

8    charge you with distribution of controlled substances, in violation of 21

9    United States Code, Section 841(a)(1).

10        Counts 5 through 18 charge you with unlicensed dealing in firearms,

11   in violation of 18 United States Code, Section 922(a)(1)(A).

12        Counts 10, 14, 17 and 18 – or excuse me, and 17 charge with carrying

13   firearms during and in relation to drug-trafficking, in violation of 18 United

14   States Code, Section 924(c).

15        Counts 6, 11, 12, 15 and 18 charge you with possession of firearms by

16   a convicted felon, in violation of 18 United States Code, Section 922(g)(1).

17        And Count 19 charges you with possession of a firearm with an

18   obliterated serial number, in violation of 18 United States Code, Section

19   922(k).

20        It's my understanding that you have a plea agreement with the

21   government today that provides that you will plead guilty to Count 17,

22   charging you with carrying a firearm during an in relation to drug-

23   trafficking; and Count 18, charging you with possession of a firearm by a

24   convicted felon; and that the government will dismiss the remaining counts

25   in the indictment against you.  Is that your understanding?

1    A   Yes, sir.

2    Q   Count 17 charges that on or about December 19, 2011, in Chatham

3 County, within the Southern District of Georgia, that you, also known as

4 Sean, knowingly and unlawfully, and during and in relation to the drug-

5 trafficking offense charged in Count 16 of the indictment, used and carried

6 a firearm; that is, a Taurus Model PT-25 .25 ACP caliber semi-automatic

7 pistol with an obliterated serial number, in violation of 18 United States

8 Code, Section 924(c).

9    Count 18 charges that on or about December 19, 2011, in Chatham

10 County, within the Southern District of Georgia, that you, who before that

11 time had been convicted of a felony, an offense punishable by

12 imprisonment for more than one year, did knowingly possess in and

13 affecting interstate commerce a firearm; that is, a Taurus Model PT-25 .25

14 ACP caliber semi-automatic pistol with an obliterated serial number, in

15 violation of 18 United States Code, Section 922(g)(1).

16    And that is what you are pleading guilty to in Counts 17 and 18.  Do

17 you understand that?

18    A   Yes, sir.

19    Q   If you should elect to go to trial in this case, Mr. Sampson, before you

20 could be found guilty on Count 17, the government would first have to

21 prove that you committed the drug-trafficking offense charged in Count 16

22 of the indictment.  And the government would also have to prove that

23 during and in relation to the commission of that offense that you knowingly

24 used and carried a firearm as charged.

25    The government would have to prove each of those elements beyond

1    a reasonable doubt to the satisfaction of a fair and impartial jury before you

2    could be convicted on Count 17. Do you understand that?

3    A    Yes, sir.

4    Q    As to Count 18, before you could be convicted on that count, the

5    government would first have to prove that you knowingly possessed a

6    firearm. The government would have to prove that the firearm had

7    previously been shipped in interstate or foreign commerce; and the

8    government would have to prove that you did this after being previously

9    convicted of a felony.

10    Now, the government would have to prove each of those elements

11    beyond a reasonable doubt to the satisfaction of a fair and impartial jury

12    before you could be convicted on Count 18 of the indictment. Do you

13    understand that?

14    A    Yes, sir.

15    THE COURT: Mr. Phillips, did you have access to the

16    government's discovery and other materials in this case?

17    MR. PHILLIPS: Yes, sir, we did, Judge, and they provided

18    videos of various transactions which I was able to show to the defendant.

19    THE COURT: Did you satisfy yourself there is a factual basis

20    for this plea; in other words, that the government can prove your client's

21    guilt beyond a reasonable doubt on Counts 17 and 18 of the indictment?

22    MR. PHILLIPS: Yes, Judge, I did.

23    Q    Mr. Sampson, even though the government is dismissing the

24    remaining counts in the indictment, according to the advisory Sentencing

25    Guidelines those charges may still play a part of the calculation of the

1    sentence.  Do you understand that?

2    A    Yes, sir.

3          THE COURT: Did you explain that to him, Mr. Phillips?

4          MR. PHILLIPS: Yes, I explained the concept of relevant

5    conduct, and I think he understands it.

6    Q    Mr. Sampson, the maximum statutory penalty that the Court could

7    impose on Count 17 would be a term of imprisonment of not less than five

8    years nor more than life imprisonment, consecutive to any other term

9    imposed; a fine of not more than $250,000; not more than five years of

10   supervised release; and a $100 special assessment.

11         The maximum penalty that the Court could impose on Count 18 of the

12   indictment would be a sentence of not more than ten years of

13   imprisonment; a fine of not more than $250,000; a term of supervised

14   release of not more than three years; and a $100 special assessment.

15         Now, those are the maximum penalties on Counts 17 and 18, but the

16   Sentencing Guidelines that were made effective as of November 1, 1987 will

17   be considered by the Court in an advisory manner when deciding and

18   determining the appropriate sentence in your case.  Do you understand

19   that?

20   A    Yes, sir.

21   Q    Has your lawyer gone over the guideline information with you?

22   A    Yes, sir.

23   Q    Have you tried to learn in your discussions with your lawyer how these

24   guidelines could affect the sentence in your case?

25   A    Yes, sir.

1    Q    Do you understand that the Court is going to consider the guideline

2    ranges as advisory when deciding upon the sentence?

3    A    Yes, sir.

4    Q    Do you understand that what your lawyer has told you about the

5    sentence that you may receive is only a guess or an estimate based upon

6    what you have told him about what you have done, and what he has been

7    able to learn from the government?

8    A    Yes, sir.

9    Q    Do you understand that the Court is not bound by that estimate?

10    A    Yes, sir.

11    Q    The sentence that you receive may not be what your lawyer has

12    estimated it to be, because at this time neither you, your lawyer, the

13    probation office, the Court, nor anyone else knows exactly what your

14    sentence will be.  Do you understand that?

15    A    Yes, sir.

16    Q    There are certain matters that are very important; and that is, what you

17    have done, whether or not you have accepted responsibility, the role you

18    played in the criminal activity, whether or not you have obstructed justice,

19    and any prior criminal history that you might have.  Do you understand

20    that?

21    A    Yes, sir.

22    Q    In certain limited ways the Court has a right to depart from the

23    advisory guidelines, downward and upward.  And you will have a right to

24    appeal the sentence, and the government will have a right to appeal the

25    sentence.  Even though you have a plea agreement with the government, I

want to make it clear that I am unlikely to sentence you outside of the range
of your advisory guidelines.

Any recommendation from the government will be considered by the
Court, but the Court is not bound by a government recommendation.  Do
you understand that?

A    Yes, sir.

Q    Even though your sentence may be more severe than you or your
lawyer have anticipated, you are still bound by your plea of guilty and you
may not withdraw it.  Do you understand that?

A    Yes, sir.

Q    Also, under guideline sentencing parole has been abolished.  You serve
the sentence and you will not be released on parole.  Do you understand
that?

A    Yes, sir.

Q    Supervised release is a very real sentence.  Under supervised release,
once you are released, you would have to conduct yourself consistent with
the rules of the Court.  You would have to become employed.  You would
have to not violate any local, state or federal law.  You would have to submit
yourself to urinalyses.  You would have to do many other things mandated
by the conditions of supervised release.  Do you understand that?

A    Yes, sir.

Q    Mr. Sampson, has anyone done anything that you consider to be wrong
or unfair which has forced you to plead guilty?

A    No, sir.

THE COURT:  Let's take up the plea agreement, please, Mr.

1    Kramer.

2           MR. KRAMER: Your Honor, the signatures on the plea

3    agreement for the government are those of AUSAs Knoche and Ippolito.

4           Mr. Phillips, is this your signature on Page 10 of the agreement?

5           MR. PHILLIPS: Yes, it is.

6           MR. KRAMER: And Mr. Sampson, above your attorney's

7    signature, is that your signature?

8           MR. SAMPSON: Yes, sir.

9           MR. KRAMER: Your Honor, the pertinent portions of the plea

10   agreement provide that upon Mr. Sampson's plea of guilty to Counts 17 and

11   18 of the indictment, the government will dismiss all other counts of the

12   indictment as to him, and we will not object to a recommendation from the

13   probation officer that he receive a reduction for acceptance of responsibility

14   under the guidelines.

15          The defendant, in addition to pleading to those counts, retains

16   all appellate rights and collateral attack rights, but agrees to give up certain

17   rights under the Privacy Act and FOIA in connection with any such post-

18   conviction litigation.

19          THE COURT: Thank you, Mr. Kramer.

20   Q    Mr. Sampson, other than the promises that have been made to you in

21   this plea agreement, has any government agent or prosecutor or anyone

22   else made you any promises about this case that you have not disclosed to

23   this Court?

24   A    No, sir.

25   Q    Your lawyer has not told you the exact sentence that will be imposed,

1   has he?

2   A   No, sir.

3   Q   Do you still wish to plead guilty to Counts 17 and 18 of the indictment?

4   A   Yes, sir.

5   Q   And are you pleading guilty because you are in fact guilty?

6   A   Yes, sir.

7   Q   Do you admit that you violated the law consistent with the charges

8   made against you in Counts 17 and 18?

9   A   Yes, sir.

10  Q   Do you fully understand all of the rights and procedures that I have

11  explained to you and that you are giving up by pleading guilty?

12  A   Yes, sir.

13      THE COURT:  The record will reflect that the defendant, Elijah

14  Sampson, was living in the city of Savannah prior to his arrest in this case.

15  He's 23 years of age.  He's not married.  He says he's never been married,

16  and he has no children.  He dropped out of school in this community in the

17  seventh grade.  He says he has enrolled in GED classes but he has not

18  received his GED at this time.

19      The defendant is not suffering from any obvious physical

20  difficulty.  The Court has observed his appearance, his alertness, his

21  awareness, and has considered his answers to my questions.  And he has

22  been made fully aware of all the significance of this proceeding.

23      The Court finds that the defendant is in full possession of his

24  faculties.  He is not under the influence of pain or medication.  He is not

25  under the influence of any alcohol or drugs.

1        As he stands before the Court today I am confident that he

2  understands the substance and meaning of the charges, the consequences

3  of his plea, and the facts which the government must prove, and which by

4  his plea of guilty he admits all of the essential elements of the offense.

5        He has had a competent lawyer whom he has known for

6  with whom he has met with on several occasions.  He says that he is

7  satisfied with the representation of his lawyer.  The Court finds that Mr.

8  Phillips, the lawyer, has discharged his duties to the defendant consistent

9  with the standard required.

10        In the Court's opinion the defendant has engaged in this

11  proceeding with intelligence and competence, and he has offered his plea of

12  guilty as a matter of his own free choice.

13  Q    Mr. Sampson, are you pleading guilty freely and voluntarily?

14  A    Yes, sir.

15  Q    Has Mr. Phillips, your lawyer, tried to force you or push you into

16  pleading guilty?

17  A    No, sir.

18        THE COURT:  Therefore, I find that he has not been coerced or

19  influenced into offering to plead guilty; that the plea is made voluntarily

20  with an understanding of the charges and the consequences of the plea.

21        May we have a proffer from the government, please, Mr.

22  Kramer?

23        MR. KRAMER: Yes, sir, thank you, Your Honor.  Call Agent

24  Kaufman.

25        [Witness Sworn]

CLERK: You may be seated.  Please state your name, state your occupation, and spell your last name for the record.

MS. KAUFMAN: My name is Michelle Kaufman.  It's K-A-U-F-M-A-N.  I'm a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives.

MICHELLE  KAUFMAN

GOVERNMENT'S WITNESS, SWORN, TESTIFIED AS FOLLOWS

DIRECT EXAMINATION BY

MR. KRAMER:

Q   Agent Kaufman, during 2011, did the ATF operate an undercover storefront in Thunderbolt, Georgia where agents undercover acting as purchasers of guns and drugs actually received guns and drugs from persons who would enter the store?

A   Yes, sir.

Q   In that connection, did the undercover agents encounter Mr. Sampson on December 19th of 2011?

A   Yes, sir.

Q   And can you give us the facts of that encounter.

A   Yes, sir.  On December 19, 2011, Mr. Sampson entered the store and met with ATF undercover agents, at which point they negotiated the sale of a quantity of cocaine.  It was approximately over 13 grams of cocaine, as well as the purchase of a Taurus PT-25 .25 caliber firearm –

Q   – Is that the firearm that is described in Count 18 of the indictment?

A   Yes, sir, it is.

Q   After negotiating for the sale of the drugs and the gun, was the sale

1    consummated by the undercover agents?

2    A    Yes, sir, it was.

3    Q    Prior to that – were the drugs tested and found positive for cocaine

4    hydrochloride?

5    A    Yes, sir.

6    Q    Was the gun sold, the Taurus .25 caliber, made in the state of Georgia?

7    A    No, sir, it's not.

8    Q    Prior to December 19th, had Mr. Sampson been convicted of a felony

9    offense in Chatham County?

10    A    Yes, sir.

11                MR. KRAMER: No further questions, Your Honor.

12                THE COURT: How about the serial number on the gun?

13                MS. KAUFMAN: The serial number was obliterated, sir.

14    Removed.

15                THE COURT: All right.  Mr. Phillips –

16                MR. PHILLIPS: No questions, Judge.

17                THE COURT:  – if you and Mr. Sampson would come back to

18    the lectern, please.

19                [NOTE: Counsel and defendant approach the lectern.]

20                MS. KAUFMAN: Any further questions, sir?

21                MR. PHILLIPS: No.

22                THE COURT: Wait a minute.

23                MR. PHILLIPS: Oh, I'm sorry, Judge.

24                THE COURT: I'll tell you when you can go and when you can

25    talk and all that stuff, okay?

1    MR. PHILLIPS: Yes, I know you do, and I'm sorry.

2    MS. KAUFMAN: I apologize.

3    THE COURT:  Mr. Sampson, you've heard the testimony of

4    Special Agent Kaufman.  Do you agree with that testimony?

5    MR. SAMPSON: Yes, sir.

6    THE COURT:  Do  have any questions that you wish to ask the

7    agent?

8    MR. SAMPSON: No, sir.

9    THE COURT: Do you have any questions, Mr. Phillips?

10   MR. PHILLIPS: No, sir, I do not, Judge.

11   THE COURT: All right, you may come down, ma'am.  Thank

12   you.

13      [Witness Excused]

14   THE COURT: Mr. Sampson, in your own words, tell me what

15   you did insofar as the charges against you in Counts 17 and 18 of the

16   indictment.

17   MR. SAMPSON: On December 19th I walked I the store.  I met

18   the undercover agent, sold him a firearm.

19   THE COURT: Well, did you do anything other than sell them a

20   firearm?

21   MR. SAMPSON: No, sir.

22   THE COURT: Well, the agent testified that you negotiated a

23   sale of cocaine?

24   MR. SAMPSON: Yeah, and the sale of cocaine, yes, sir.

25   THE COURT: Excuse me?

1   MR. SAMPSON: Yes, and the sale of cocaine.

2   THE COURT: So you negotiated the sale of cocaine and sold the

3   cocaine; is that correct?

4   MR. SAMPSON: Yes, sir.

5   THE COURT: You also sold the firearm that we talked about?

6   MR. SAMPSON: Yes, sir.

7   THE COURT: Is there anything else that you want to say to this

8   Court?

9   MR. SAMPSON: No, sir.

10   THE COURT: Do you know of any reason why I should not

11   accept your plea of guilty at this time?

12   MR. SAMPSON: No, sir.

13   THE COURT:  Do you know of any reason, Mr. Phillips?

14   MR. PHILLIPS: None at all, Judge.

15   THE COURT: Does the government know of any reason, Mr.

16   Kramer?

17   MR. KRAMER: None, Your Honor.

18   THE COURT:  Based upon the record made at this proceeding

19   the Court is satisfied there is a factual basis for the plea.  Let the plea be

20   entered.

21   CLERK: Yes, Your Honor.

22   [NOTE: The plea is entered.]

23   CLERK: The defendant's plea of guilty to Counts 17 and 18 has

24   been entered, Your Honor.

25   THE COURT:  The plea of guilty is accepted.  The United States

Probation office will conduct a presentence investigation. When that investigation is complete they will file a report. A copy of that report will be made available to you, Mr. Sampson, and to your counsel, and to counsel for the government.

When you receive the report you should review it carefully with your lawyer. If you and your lawyer think that the report has any errors, or if you have any objections to any matters in the report, then you can let those errors or objections be known to the probation officer. If you cannot resolve those matters with the probation officer prior to sentencing, then the Court will resolve them at the time of sentencing.

Anything else in this matter today, Mr. Phillips?

MR. PHILLIPS: No, sir, Judge.

THE COURT: Mr. Kramer?

MR. KRAMER: No, Your Honor.

THE COURT: Mr. Phillips, how is your client Mr. Gibson doing? Is he making any progress on trying to straighten his life out?

MR. PHILLIPS: Yes, sir. He got a shave, Judge, and I believe he had surrendered his license. He had not followed through with that while he was incarcerated, but I have been in contact with the Bar and I think he has signed the forms and sent them back. But he came in shaved, and looks much better.

THE COURT: We'll be in recess.

[NOTE: Whereupon the proceedings are concluded.]

STATE OF GEORGIA

CHATHAM COUNTY.


CERTIFICATE OF REPORTER


I, Marie Cowart, do hereby certify that the above and foregoing pages of typewritten material is a true, correct and complete transcript of the evidence and proceedings adduced in the hearing stated in the captioned matter.

This 5th day of December, 2016.


/s/ *Marie Cowart*

Marie Cowart, CCR B-237
United States Court Reporter
Southern District of Georgia
Savannah Division


P. O. Box 9572
Savannah, GA 31412
(912) 650- 4066